**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RIANA BUFFIN; CRYSTAL
PATTERSON,
              *Plaintiffs-Appellees*,

              and

CITY AND COUNTY OF SAN
FRANCISCO; PAUL MIYAMOTO,
Sheriff,
              *Defendants-Appellees*,

              v.

STATE OF CALIFORNIA; ROB BONTA,
              *Defendants-Appellants*,

              and

CALIFORNIA BAIL AGENTS
ASSOCIATION,
              *Intervenor-Defendant.*

No. 20-15518

D.C. No.
4:15-cv-04959-
YGR

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted March 4, 2021
San Francisco, California

Filed January 13, 2022

Before:  Bobby R. Baldock,[*] Kim McLane Wardlaw, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wardlaw

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's order requiring California to pay attorney's fees and costs in the amount of $1,950,000.00 after plaintiffs successfully challenged the State's application of a mandatory bail law in San Francisco through an official-capacity class action suit brought pursuant to 42 U.S.C. § 1983 against the Sheriff for the City and County of San Francisco, who enforced California's bail law on behalf of the State.

Plaintiffs alleged that the bail schedule set by the San Francisco Superior Court, an arm of the State, violated their rights to equal protection and due process because it failed to take into account pre-arraignment detainees' inability to pay the state court's pre-set mandatory bail amounts. Following years of litigation, the district court enjoined the Sheriff, who it had long ago decided enjoyed Eleventh Amendment immunity from a damages judgment because she was acting on behalf of the State, from enforcing the bail schedule and any other state bail determination that made the existence or duration of pre-trial detention dependent on the detainee's ability to pay. After the injunction issued, the district court awarded a reduced lodestar amount of attorney's fees—amounting to $1,950,000.00—to the class. And it held the State of California responsible for payment of the attorney's fees, given that this was an official-capacity action against the Sheriff, who was at all times acting on behalf of the State of California.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In affirming the attorney's fee award, the panel rejected the State's arguments that it was not responsible for paying the attorney's fee award because (1) the State was dismissed from the case on the ground of Eleventh Amendment immunity from suit; and (2) the State did not otherwise participate in the litigation, either through intervention or by offering to represent the Sheriff in this action. The panel held that although it was true that the State was immune from a suit for damages here, the district court correctly ruled that the Sheriff could be sued in her capacity as a state official for injunctive relief, and that the State could be assessed a reasonable attorney's fee under 42 U.S.C. § 1988. The panel further noted that in *Hutto v. Finney*, 437 U.S. 678 (1978), the Supreme Court confirmed that § 1988 awards against a state that is not a party to the lawsuit can be proper. The panel held that given the district court's ruling that the Sheriff acted on behalf of the State when setting bail, the district court did not err in concluding that the Sheriff in her official capacity acted as the State's agent for the purposes of assessing attorney's fees. The panel further determined that the State had the necessary notice and an opportunity to respond to plaintiffs' claims that this official-capacity suit against the Sheriff could properly be treated as a suit against the State.

## COUNSEL

Jose A. Zelidon-Zepeda (argued), Deputy Attorney General; Benjamin M. Glickman, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellants.

Sadik Huseny (argued), Tyler P. Young, Aaron T. Chiu, and Abagil Parr, Latham & Watkins LP, San Francisco, California; Phil Telfeyan, Equal Justice Under Law, Washington, D.C.; for Plaintiffs-Appellees.

Jeremy M. Goldman (argued), Co-Chief of Appellate Litigation; Office of the City Attorney, San Francisco, California; for Defendants-Appellees.

## OPINION

WARDLAW, Circuit Judge:

Riana Buffin and Crystal Patterson successfully challenged the application of the State of California's ("State") mandatory bail law in San Francisco through this official-capacity class action suit against the Sheriff for the City and County of San Francisco, who enforced California's bail law on behalf of the State. In this 42 U.S.C § 1983 civil rights action, Buffin and Patterson claimed that the bail schedule set by the San Francisco Superior Court, an arm of the State, violated their rights to equal protection and due process because it failed to take into account pre-arraignment detainees' inability to pay the state court's pre-set mandatory bail amounts. Ultimately, following years of

litigation, the district court enjoined the Sheriff, who it had long ago decided enjoyed Eleventh Amendment immunity from a damages judgment because she was acting on behalf of the State, from enforcing the bail schedule and any other state bail determination that makes the existence or duration of pre-trial detention dependent on the detainee's ability to pay. After the injunction issued, the district court awarded a reduced lodestar amount of attorney's fees—amounting to $1,950,000.00—to the class. And it held the State of California, which never challenged the amount of the fees, responsible for payment of the attorney's fees, given that this was an official-capacity action against the Sheriff, who was at all times acting on behalf of the State of California.

The State appeals this determination, arguing that it is not responsible for paying the attorney's fee award because (1) the State was dismissed from the case on the ground of Eleventh Amendment immunity from suit; and (2) the State did not otherwise participate in the litigation, either through intervention or by offering to represent the Sheriff in this action. Like the district court, we reject these arguments because under *Hutto v. Finney*, 437 U.S. 678 (1978) and its progeny, the State can be required to pay the attorney's fees, and its arguments miss the point of the controlling case law. We therefore affirm the district court's order requiring California to pay the class's fees and costs in the amount of $1,950,000.00.

## I.

### A.

For background, we first describe the State of California's bail-setting regime. California regulates how its sheriffs and judges set bail through "a comprehensive statutory scheme." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 660

(9th Cir. 2007); *see generally* Cal. Penal Code §§ 1268–1320.5.  Under state law, bail is set in one of the following three ways:

> (1) if the defendant has had his first hearing, bail is set at the "amount fixed by the judge" at that hearing;

> (2) if the defendant has not had his first hearing, but was arrested pursuant to an arrest warrant, bail is set at "the amount fixed in the warrant of arrest"; or

> (3) if the defendant has not had his first hearing and was not arrested pursuant to an arrest warrant, bail is set by the sheriff at the amount dictated in a "uniform countywide schedule of bail."

Cal. Penal Code § 1269b(b).

This case revolves around the third method of setting bail: uniform countywide bail schedules.  In California, state law imposes a duty on the Superior Court of each county to "prepare, adopt, and annually revise a uniform countywide schedule of bail" for all bail-eligible felony offenses and all misdemeanors and infraction offenses except Vehicle Code infractions. *Id.* § 1269b(c).  In turn, the Sheriff must comply with the Superior Court's uniform schedule.  *See id.* § 1269b(a).  The Sheriff determines an arrestee's bail amount solely by reference to the bail schedule and may release an arrestee only if he pays that amount.  An excerpt

from San Francisco's bail schedule, created by the San Francisco Superior Court, appears below:

### 2015 FELONY & MISDEMEANOR BAIL SCHEDULE (July 1, 2015)

For all unscheduled **felonies**, the bail amount is $15,000. For all unscheduled **misdemeanors**, the bail amount is $3,000. For all unscheduled **infractions**, the bail amount is $100. NOTE: All attempts of an offense (whether listed as "attempt," "att," or "664") have the same bail amount as the offense itself.

NOTE: "#" indicates that bail amount applies to all subsections of the listed statute, or subsection, unless subsection is listed with differnt bail. Offenses subject to P.C. Section 1270.1 are marked in this schedule with a single asterisk ( * )

Attached at the end of this schedule are two conversion charts related to Penal Code weapon offenses. The first table is the conversion from the old statute to the current section. The second table is the conversion from new statutes to the old. The intention of this bail schedule is to set bail based on the current statute. In the event that the old statute is reference in the booking process, you are to set the higher bail based on these conversion tables, and NOT to set bail as a default.

### FELONY OFFENSES -- PENAL CODE

| OFFENSE | DESCRIPTION | BAIL |
|---|---|---|
| 37 * # | Treason | set by judge |
| 67 | Bribery | 40,000 |
| 67.5 (b) | Bribery of public officer or employee (If theft of thing given or offered would be grand theft) | 40,000 |
| 68 | Taking bribe | 40,000 |
| 69 | Resisting arrest/threatening officer | 40,000 |
| 76 (a) | Threats to the life of an official or judge | 50,000 |
| 85 | Bribe government official | 40,000 |
| 92 | Bribing judge or juror | 40,000 |
| 93 (a) | Accepting bribe by judge or juror | 40,000 |
| 115 (a) | Offering forged/false documents for filing | 40,000 |
| 118 (a) | Perjury | 40,000 |
| 118a | Perjury by documents | 40,000 |
| 118.1 | False police report | 40,000 |
| 127 | Subornation of perjury | 40,000 |
| 128* | Perjury - capital case | set by judge |
| 136.1 * # | Preventing or dissuading a victim or witness from testifying | 75,000 |
| 137(b) | Inducing false testimony | 50,000 |
| 139 (a) | Threats of force or violence against witness or victim | 75,000 |
| 140 (a) | Threaten witness | 50,000 |
| 148.10 # | Resisting officer & causing death or serious bodily injury | 50,000 |
| 165 | Bribery of councilman, supervisor, etc. | 40,000 |
| 166(c)(4) | Violation of order connected with domestic violence with previous conviction for violating domestic violence order | 50,000 |
| 182 (a)(1-5) | Conspiracy (to commit specific felony). When no felony is specified, bail is $15,000 | same as underlying |
| 182(a)(6) | Conspiracy to commit any crime against president, vice-president and others | 300,000 |
| 186.22 (a) | Participation in street gang activity | 25,000 |
| 186.26 # | Gang activities | 40,000 |
| 186.28 # | Transferring control of firearm to gang member | 50,000 |
| 187 * # | Murder | set by judge |

As this excerpt demonstrates, bail schedules list the criminal charges that an individual might face and a corresponding amount of bail for each offense. *Id.* § 1269b(e). But setting

bail by this uniform bail schedule does not allow the Sheriff to take into account anything else—including an individual's ability to pay—when calculating bail. And California sheriffs are prohibited by state law from deviating from this schedule when setting bail. *See id.* § 1269b(a).

Along with many others, Buffin and Patterson had their bail set according to this schedule. The police arrested Buffin on October 26, 2015, and, based on San Francisco's state-mandated bail schedule, the Sheriff set her bail at $30,000. The next day, the police arrested Patterson, and the Sheriff used the same schedule to set her bail at $150,000. Both Buffin and Patterson were indigent and unable to afford these large bail amounts.

## B.

On October 28, 2015, Buffin and Patterson filed this class action lawsuit under 42 U.S.C. § 1983, originally naming as the defendants the City and County of San Francisco ("County") and the State of California, but the State successfully moved to dismiss on grounds of sovereign immunity. Ultimately, the plaintiffs filed a Third Amended Complaint, adding as defendants the Sheriff and the California Attorney General for their alleged roles in fixing and enforcing the mandatory bail schedule in violation of plaintiffs' rights to equal protection and due process. The Sheriff, County, and Attorney General moved under Rule 12(b)(6) to dismiss the action. The County and the Sheriff argued that the complaint failed to state a claim against them because the Sheriff acted on behalf of the State when she enforced the bail schedule, and therefore she, too, was entitled to sovereign immunity. The Attorney General argued, inter alia, that she also enjoyed Eleventh Amendment sovereign immunity, and that the *Ex Parte*

*Young* exception was inapplicable. *See generally Ex Parte Young*, 209 U.S. 123 (1908).

The district court applied the *McMillian v. Monroe County*, 520 U.S. 781 (1997) framework to determine whether the Sheriff acted on behalf of the State or on behalf of the County when she detained an individual unable to pay the bail amount set by the Superior Court in the county-wide bail schedule. In light of California's comprehensive bail regime and the state law requirement that the Sheriff detain arrestees until they pay a scheduled amount—giving the Sheriff no discretion but to do so, *see* Cal. Penal Code § 1269b—the district court ruled that the Sheriff "acts on behalf of the State when she detains a person based on his or her inability to pay the bail amount prescribed in the bail schedule as set by the Superior Court." *Buffin v. City and Cnty. of S.F.*, No. 15-cv-04959-YGR, 2016 WL 6025486, at *9 (N.D. Cal. Oct. 14, 2016). Thus, according to the district court, "[t]he State is the relevant actor when the Sheriff detains a person who does not pay bail." *Id.*

Further, the district court concluded, as a state actor, the Sheriff in her official capacity received Eleventh Amendment immunity from a suit for monetary relief—a protection enjoyed only by states, arms of the state, and state officials acting in their official capacities.[1] *See Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007). Second, because the Sheriff acted on behalf of the State, the district court dismissed the sole claim against the County because

---

[1] The phrase Eleventh Amendment immunity is a "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (citation omitted).

Buffin and Patterson had "not alleged a *municipal* policy or practice for which the County may be held liable." *Buffin*, 2016 WL 6025486, at *9 (emphasis added); *see McMillian*, 520 U.S. at 784–86. So, although plaintiffs could not proceed against the Sheriff and County for money damages, they could proceed to the extent they sought injunctive or declaratory relief against the Sheriff in her official capacity for enforcing the unconstitutional bail law. *See Ex Parte Young*, 209 U.S. at 155–56.

However, the *Ex Parte Young* exception to sovereign immunity did not apply to the California Attorney General because the Attorney General did not enforce the unconstitutional bail law—"[r]ather . . . the Sheriff is the actor responsible for enforcing the challenged state law in San Francisco." *Buffin*, 2016 WL 6025486, at *12. Absent the *Ex Parte Young* exception, no similar claim could lie against the California Attorney General. *See Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). The district court therefore dismissed the Attorney General as a party to the case.

As a result, this action proceeded solely against the Sheriff acting in her official capacity on behalf of the State of California. One might have thought that at this point, the Attorney General would have taken over the defense of this action from the San Francisco city attorneys representing the Sheriff, but the Attorney General's Office didn't do so.

Next, the Sheriff filed an answer to the operative Third Amended Complaint stating that she did not intend to defend California's bail laws. The Attorney General then represented, along with the California Bail Bonds Association (CBAA) in a stipulation among all the parties, that they separately intended to move to intervene in this action, "given that no currently named Defendant intends to

defend the lawsuit." Then, the Attorney General apparently changed her mind and filed a Notice of Non-Intervention in the district court, informing the parties that she would not move to intervene. The CBAA successfully intervened to defend the State's bail regime.

The parties heavily litigated the case. On cross-motions for summary judgment, the now-certified plaintiff class prevailed. The district court ruled that the Sheriff's use of the countywide bail schedule—in accordance with state law—violated the Fourteenth Amendment, applying the strict scrutiny standard of review.[2] At stake was the plaintiff class's fundamental right to liberty of which it was deprived by reason of its indigence. The district court granted summary judgment against the Sheriff in her official capacity. The parties then negotiated and reached a settlement as to the appropriate class-wide and prospective injunctive remedy. The district court approved that settlement and issued an injunction barring the Sheriff from using the State's bail schedule or any other formula dependent on the arrestee's ability to pay to set bail in the future. No appeals were filed from these rulings.

## C.

Because Buffin and Patterson had prevailed against the Sheriff in a § 1983 official-capacity suit, they were presumptively entitled to an award of attorney's fees under § 1988. *See* 42 U.S.C. § 1988; *see also Hensley v.*

---

[2] California's own courts have also recently concluded that blind adherence to such a bail schedule violates the Fourteenth Amendment. *See In re Humphrey*, 228 Cal. Rpt. 3d 513, 538–42 (Cal. Ct. App. 2018), *aff'd and ordered precedential in relevant part by In re Humphrey*, 472 P.3d 435 (Cal. 2020) (en banc); *accord. In re Humphrey*, 482 P.3d 1008, 1019 (Cal. 2021).

*Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (cleaned up).  However, both they and the Sheriff thought that the State should pay the attorney's fees, given that the district court had earlier ruled that the Sheriff acted for the State when she set bail under the bail schedule.  The City Attorney therefore reached out to the California Attorney General's Office and invited it to participate in the attorney's fees negotiations.   That office refused to join those negotiations.

Buffin, Patterson, and the Sheriff therefore negotiated among themselves and agreed to an attorney's fees award totaling $1,950,000.  However, they still proposed to the district court that it order the State to pay these fees.  The district court invited the State to submit a brief on the propriety of an order requiring the State to pay the plaintiffs' attorney's fees and costs.  At that, the California Attorney General's Office re-entered the fray and objected to an order requiring the State to pay the fees, but it did not dispute the amount of the fees.

After reviewing the State's arguments, the district court ordered the State to pay the attorney's fees.  Relying on *Hutto*, the district court concluded that such an award was proper so long as the plaintiffs had prevailed "for all practical purposes . . . against the State itself."  *Hutto*, 437 U.S. at 699–700.   Given that the district court had already held that the Sheriff acted on behalf of the State when setting bail, enjoyed Eleventh Amendment immunity from monetary relief, and was liable in her official capacity for purposes of injunctive relief, the district court found *Hutto*'s condition satisfied.  And because the State did not contest the amount of attorney's fees, the district court

ordered the State to pay the entire sum, noting that it was a significant reduction from the lodestar amount.

On March 24, 2020, the State timely appealed that attorney's fees award.[3] The district court agreed to stay its order pending appeal, though it demanded that the State deposit 125% of the attorney's fees judgment into a secure third-party account. On October 15, 2020, we granted the State's motion to stay the fee award without bond while we considered this appeal.

## II.

We review a district court's award of attorney's fees under 42 U.S.C. § 1988 for an abuse of discretion, *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991), while "[a]ny element of legal analysis which figures in the district court's

---

[3] Although the State of California was no longer a named party to the suit when the attorney's fees judgment was entered against it, we will nonetheless hear the State's appeal. We will "hear nonparties' appeals only in 'exceptional circumstances.'" *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002)). "We have allowed such an appeal only when (1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Hilao v. Est. of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (citation omitted). The equities weigh in favor of hearing an appeal "when judgment has been entered against the nonparty." *Janssen Pharmaceutica N.V.*, 945 F.3d at 1242 (citation omitted).

Here, exceptional circumstances warrant allowance of the State's appeal. First, not only did the State participate in the district court proceedings as a former party, it also briefed and argued the propriety of *this* attorney's fees judgment before the district court. Second, because the attorney's fees judgment was entered against the State, the equities weigh in favor of hearing the State's appeal.

decision is reviewed *de novo*," *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citation omitted). In other words, we will not disturb a district court's fee award so long as it rests on an accurate view of the law and is otherwise reasonable.

## III.

When § 1983 plaintiffs have prevailed against a state official in his official capacity, they may recover attorney's fees under 42 U.S.C § 1988. *Kentucky v. Graham*, 473 U.S. 159, 170 (1985); *Hutto*, 437 U.S. at 699–700. And the district court reviewing an application for § 1988 fees can require those fees to come from (1) the state official's "agency or [funds] under his control" or (2) "the State" itself. *Hutto*, 437 U.S. at 700. We affirm the district court's decision to require that the attorney's fees be paid by the State itself, because it correctly found that the Eleventh Amendment does not bar § 1988 attorney's fees awards and that the plaintiff class prevailed against the Sheriff for actions taken on behalf of the State.

## A.

The State principally objects to the district court's award of attorney's fees against it because it enjoys sovereign immunity under the Eleventh Amendment from suits for monetary damages. Although it is true that the State is immune from a suit for damages here, the district court correctly ruled that the Sheriff could be sued in her capacity as a state official for injunctive relief, and that the State could be assessed a reasonable attorney's fee under 42 U.S.C. § 1988.

The Eleventh Amendment's grant of state sovereign immunity generally prevents nonconsenting states from

"be[ing] sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). But for decades, the Supreme Court has acknowledged two rationales for nonetheless permitting an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) against a sovereign state. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989); *Hutto*, 437 U.S. at 691–99.

First, "Congress has plenary power to set aside the States' [sovereign] immunity from retroactive relief in order to enforce the Fourteenth Amendment." *Hutto*, 437 U.S. at 693; *accord Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n*, 922 F.3d 929, 941–42 (9th Cir. 2019) (acknowledging this aspect of *Hutto*); *Spain v. Mountanos*, 690 F.2d 742, 744 (9th Cir. 1982) (same). And as *Hutto* elaborated, in enacting 42 U.S.C. § 1988, "Congress undoubtedly intended to exercise that power and to authorize fee awards" against the states "when their officials are sued in their official capacities." 437 U.S. at 693–94.

Second, and in any event, "the application of § 1988 to the States [does] not depend on congressional abrogation of the States' immunity." *Jenkins*, 491 U.S. at 279; *see Hutto*, 437 U.S. at 695–98. For § 1988 "imposes attorney's fees 'as part of the costs'" the losing party must pay, and "[c]osts have traditionally been awarded without regard for the States' Eleventh Amendment immunity." *Jenkins*, 491 U.S. at 280 (quoting *Hutto*, 437 U.S. at 695). "The holding of *Hutto*, therefore, was not just that Congress had spoken sufficiently clearly to overcome Eleventh Amendment immunity in enacting § 1988, but rather that the Eleventh Amendment did not apply to an award of attorney's fees ancillary to a grant of prospective relief." *Id.*

Thus, to the extent that the State argues that "[t]here is no 'attorneys' fees' exception to the Eleventh Amendment,"

it misunderstands Supreme Court precedent.  State of Cal.'s Open. Br. 15.  It has identified no Supreme Court decision overruling *Hutto* and its progeny.  Indeed, in its reply brief, California agrees that such awards are proper if made because of a state officer's conduct.

Thus, the State's point that it enjoys sovereign immunity from § 1983 claims seeking retroactive monetary damages is of no import here.  Because a § 1988 claim for attorney's fees "is uniquely separable from the cause of action to be proved at trial," it does not matter that the Eleventh Amendment precludes a state's retroactive fiscal liability under § 1983.  *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 452 (1982); *see also id.* at 451–52 ("Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.'"); *Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (noting that Congress evinced different intentions regarding the abrogation of Eleventh Amendment immunity when it enacted § 1983 and § 1988).

The State's reliance on *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719 (1980), is also misplaced.  That case merely established that attorney's fees under § 1988 should not be awarded based on the actions of state officials acting in a legislative capacity.  446 U.S. at 738 (finding "no [] indication . . . that Congress intended [§ 1988] to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity").  Indeed, the Court essentially confirmed that a fee award against the Virginia State Bar— the authority responsible for "enforc[ing]" the challenged state attorney disciplinary rules—or the Virginia Supreme

Court, to the extent it enforced rather than made those rules, would have been proper. *Id.* at 739 ("Fee awards against enforcement officials are run-of-the-mill occurrences.").

In short, any suggestion of a blanket Eleventh Amendment prohibition on attorney's fees awards against states under § 1988 is a mirage. To the extent that the State suggests otherwise, its "argument is directed to the wrong court." *Spain*, 690 F.2d at 744 n.2.

## B.

Although it is settled that § 1988 permits attorney's fees awards against a non-party state in some circumstances, *Hutto*, 437 U.S. at 699–700, this case raises a related issue that our Circuit has yet to settle: how to decide which party should be liable for attorney's fees among a state, a county, and an official-capacity defendant. The State argues that because it was not a part of this lawsuit, it should not be the entity on the hook for attorney's fees. We disagree.

The Supreme Court confirmed in *Hutto* that § 1988 awards against a state that is not a party to the lawsuit can be proper. Specifically, in making such an award, it is immaterial that neither a state nor its agency "is expressly named as a defendant." *Id.* at 699. [4] An *Ex Parte Young* suit

---

[4] *Hutto* suggested that it would be preferable for the order to run against the official actually sued, but that the distinction ultimately does not matter where the state would be required to pay in any event. *Hutto* explained: "Instead of assessing the award against the defendants in their official capacities, the District Court directed that the fees are 'to be paid out of Department of Correction funds.' Although the Attorney General objects to the form of the order, no useful purpose would be served by requiring that it be recast in different language." 437 U.S. at 692 (1978) (internal citation and footnote omitted).

against a state officer in her official capacity is "for all practical purposes, brought against the State." *Id.* Congress itself recognized as much in passing § 1988, for "[t]he legislative history makes it clear that in such suits attorney's fee awards should generally be obtained 'either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).'" *Id.* at 700 (quoting S. Rep. No. 94-1011, p. 5 (1976)).

However, as the Sixth Circuit has aptly noted, "*Hutto* doesn't tell us how to choose" whether § 1988 fees can or should be assessed against a state, a county department or entity, or a defendant in her official capacity. *Miller v. Caudill*, 936 F.3d 442, 450 (6th Cir. 2019). "[T]he *Hutto* Court faced a choice between individual officers or the government they served, so the Court never determined when and how liability could shift amongst *three* possible parties," *id.* (emphasis in original)—in this case the Sheriff, the County, and the State. This problem frequently arises when it comes to certain county officials, whose duties and actions often depend on both county and state laws or policies. *See, e.g.*, *id.* at 450–52 (discussing a county clerk responsible for issuing marriage licenses as dictated by state law); *Echols v. Parker*, 909 F.2d 795, 800–01 (5th Cir. 1990) (discussing a county attorney, district attorney, and county judge enforcing a state anti-boycott law).

Although our Circuit has never addressed this issue, the Fifth, Sixth, and Seventh Circuits have offered a persuasive answer regarding when such an award should fall upon a state. Those circuits determine where § 1988 liability should fall by "look[ing] to the entity on whose behalf [the official] acted" when the official "[took] the challenged action."

*Miller*, 936 F.3d at 450; *see also Herbst v. Ryan*, 90 F.3d 1300, 1306 (7th Cir. 1996) (asking which "governmental entity is the 'moving force' behind the constitutional wrong that forms the basis of the suit") (citations omitted); *Echols*, 909 F.2d at 800–01 (asking whether the constitutional wrong was the result of state or county policy). This makes sense, "[b]ecause official-capacity lawsuits seeking injunctive relief are effectively lawsuits against the government," and "which government an official serves determines which government a plaintiff prevails against." *Miller*, 936 F.3d at 450; *cf. Graham*, 473 U.S. at 165 ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.").

And this test from our sister circuits aligns with how, over the years, the Supreme Court has explained what it means to be a government official sued in his official capacity. For instance, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," *Brandon v. Holt*, 469 U.S. 464, 471 (1985), or the "entity of which [he] is an agent," *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citation omitted). When sued in their official capacity, these government agents and representatives enjoy the same immunities and are held liable under the same standards as the government entities they represent. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Here, the San Francisco County Sheriff was charged by state law with enforcing a state-mandated bail regime. We must resolve whether the Sheriff was a state or local official for the purposes of this claim. To do so, we must first home in on the challenged actions the Sheriff took. County officials like the Sheriff can act as county or state officials,

depending on the particular context. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004), *reversed on other grounds by Garcetti v. Ceballos*, 547 U.S. 410 (2006). For such officials who "serve two masters," we examine whether "the particular acts the official is alleged to have committed fall within the range of his state or county functions." *Id.*; *cf. McMillian*, 520 U.S. at 785–86.

As the district court explained in great depth when it ruled on the County and Sheriff's motions to dismiss, California's statutory bail regime enlisted the County Sheriff and compelled her to set bail in line with a state-created bail schedule. California law permits a sheriff to set bail using *only* a bail schedule set by the state court; she must set bail at the amount listed in that document. Cal. Penal Code § 1269b(b). Moreover, the Sheriff has no discretion over when to release or hold a pre-trial detainee. If the detainee makes bail, the Sheriff must release her; if not, the Sheriff must keep her in jail pending her court proceedings. *Id.* §§ 1269, 1269a, 1269b(a), (g); *see also id.* § 1270 (giving a court or magistrate the authority to release a defendant on their own recognizance, but conveying no similar power to a sheriff or peace officer).

The district court viewed the State as the Sheriff's master as she set bail under the state-mandated bail schedule. The court therefore concluded that the Sheriff "act[ed] on behalf of the State" when setting bail. *Buffin*, 2016 WL 6025486, at *9. *See* Restatement (Third) of Agency § 1.01 (2021) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf."). Thus, "the Sheriff [wa]s the actor responsible for enforcing the challenged state law in San Francisco," *id.* at *12, and

the State was "the relevant actor when the Sheriff detains a person who does not pay bail," *id.* at \*9.

Given that unchallenged ruling, the district court did not err in concluding that the Sheriff in her official capacity acted as the State's agent for the purposes of assessing attorney's fees. *See Echols*, 909 F.2d at 800. For when a state statutory regime comprehensively "directs the actions of an official, as here, the officer, be he state or local, is acting as a state official," *i.e.*, a state agent. *Id.* at 801; *accord Miller*, 936 F.3d at 451 (finding it dispositive that "Kentucky controls every aspect of how county clerks issue marriage licenses" when concluding that these clerks were state officials). In other words, instead of exercising control over the Sheriff by signing her paycheck, the State here used its plenary power over the structure of California's government to enlist the Sheriff and command her to do its bidding when she set bail using a bail schedule. The State may make that choice. But in doing so, the State makes the Sheriff a state official in this context, and so bears responsibility for the unconstitutional actions it mandated she take. *See Miller*, 936 F.3d at 451–52; *cf.* Restatement (Second) of Agency § 224 (1958) ("*One compelled by law or duress to render services to another has power to subject the other to liability as if there were a master and servant relation.*") (emphasis added).

Despite the State's protest, no further factual information was necessary to establish that the Sheriff acted as an agent of the State. California's own bail law—"the official policy of the State," *Echols*, 909 F.2d at 801 (internal citation omitted)—was all the evidence the district court needed. The other provisions of California law generally "labeling" sheriffs "as local officials" cannot overcome the fact that—

in this particular context—the Sheriff acted for the State. *Id.*; *accord Miller*, 936 F.3d at 451.

Indeed, any other conclusion at the attorney's fees stage would have led to an untenable dissonance with the district court's earlier Eleventh Amendment holding. The district court had noted that the Sheriff was "entitled to immunity from suit for money damages under the Eleventh Amendment." *Buffin*, 2016 WL 6025486, at *9. But the Sheriff could possess that immunity only if she was being sued in her official capacity as a state official. For in an official-capacity suit, a defendant can claim only those "forms of sovereign immunity that the entity" she represents "may possess, such as the Eleventh Amendment." *Graham*, 473 U.S. at 167. And only a state, its arms and instrumentalities, and its officials (when sued in their official capacities) enjoy that kind of immunity; the county does not. *Lewis*, 137 S. Ct. at 1290–91; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.54 (1978). In other words, here the Sheriff's successful assertion of Eleventh Amendment immunity was a telltale sign that she was being sued as a state official—*i.e.*, an agent of the State—in her official capacity.[5]

---

[5] In this appeal, we do not review the accuracy of the district court's Eleventh Amendment analysis. Indeed, we likely lack jurisdiction on that front, as the only order on appeal is the district court's attorney's fees order. *See Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1072, 1081–82 (9th Cir. 2020) (recognizing the distinction between issues concerning attorney's fees and issues concerning the underlying judgment). And even if we had jurisdiction, the State has not disputed the district court's merits holdings, meaning it has waived those arguments. *See Freedom from Religion Found., Inc. v. Chino Valley Unif. Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018) (per

That principle also sinks the State's main line of attack in this case.  The State's argument that the district court "conflated the Sheriff's entitlement to immunity as a 'state actor' with respect to damages, with the Sheriff's purported status as an *agent* of the State" entirely misunderstands the import of an official-capacity defendant successfully invoking Eleventh Amendment immunity.  State of Cal.'s Open. Br. 12.  Indeed, we struggle to imagine a situation where an official-capacity defendant, entitled to Eleventh Amendment immunity from monetary relief, would not be

---

curiam).  We therefore must assume that the Sheriff shared in the State's Eleventh Amendment immunity.

We do note, however, that the district court concluded the Sheriff possessed Eleventh Amendment immunity in this suit based on its *McMillian* analysis.  We have doubts about whether that was the proper analytical framework.  The *McMillian* inquiry governs only whether Buffin and Patterson had asserted a viable § 1983 claim against the County.  *See generally Taylor v. Cnty. of Pima*, 913 F.3d 930, 936–38 (9th Cir. 2019) (Graber J., concurring); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("[T]he scope of the Eleventh Amendment and the scope of § 1983 are [] separate issues.").

Still, the district court's Eleventh Amendment immunity conclusion may have been correct on the theory that the Sheriff's Department acted here as "an arm of the State" and that the Sheriff therefore worked for an "arm of the State."  *See, e.g.*, *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (explaining that a Tennessee county sheriff enforcing a bail schedule was an arm of the state because "[he] commit[ted] an alleged constitutional violation by simply [] complying with state mandates that afford no discretion") (internal quotation marks and citation omitted)); *but see Ray v. Cnty. of L.A.*, 935 F.3d 703, 709 (9th Cir. 2019) (outlining our more traditional arm of the state analysis). Or perhaps the Sheriff can be better thought of as serving the entity that created the bail schedule—the San Francisco Superior Court, also an arm of the State.  *See Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), *superseded by statute on other grounds*.

an agent of the State and thus a state official.  Thus, the district court correctly found that the Sheriff acted as a state official for the purposes of this action, subjecting the State to liability for attorney's fees under § 1988.

## C.

Nor will we reverse the district court's award of attorney's fees because the State's attorneys did not represent the Sheriff throughout this case.  Whether a county employee is a state or local official turns on what capacity he acts in when he enforces an unconstitutional law or policy—not which legal office represents him in court.[6]  And it was the Office of the Attorney General that chose not to represent the Sheriff or to intervene to defend the state bail laws—despite knowing the Sheriff's position that the laws were unconstitutional.

## D.

California's last defense is to turn to two decisions from our sister circuits.  *See Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194 (4th Cir. 2019); *Venuti v. Riordan*, 702 F.2d 6 (1st Cir. 1983).  But neither case is on point here.

*Venuti* involved very different factual circumstances— the challenged law was a *discretionary* licensing regime,

---

[6] Although this consideration may be a factor in determining whether the party is a state or local official, *see Hutto*, 437 U.S. at 699 (noting Arkansas's representation of state prison officials sued in their official capacity to illustrate the logic behind deeming such a suit as effectively lying against the state), the ultimate determination of this question *turns* on whether the party acted on behalf of a state or a local government when enforcing an unconstitutional law or policy, *see Miller*, 936 F.3d at 450.

rather than a *discretion-less* bail regime—and its holding has no bearing here: it unremarkably affirmed that a district court can assess § 1988 attorney's fees against municipal agencies that enforce an unconstitutional state law through a *discretionary* licensing regime. *See Venuti*, 702 F.2d at 8; *see also Venuti v. Riordan*, 521 F. Supp. 1027, 1031 (D. Mass. 1981) (explaining that the unconstitutional state law "delegate[d] complete discretion to [municipal] licensing authorities"). *Brandon*, meanwhile, principally demonstrates that a county body's enforcement of an unconstitutional state law is not a "special circumstance[]" that justifies denying plaintiffs' attorney's fees under § 1988. *See* 921 F.3d at 201. It never considered whether that county body or its officials were agents, arms, or representatives of the state or what such a conclusion would mean in the § 1988 context.

In sum, the district court's merits ruling dictated the conclusion that the Sheriff was a state official sued in her official capacity.[7]

---

[7] Given our reasoning here, we need not determine what bearing, if any, the "state policymaker" test under *McMillian* has on sovereign immunity inquiries under the Eleventh Amendment or on determinations of whether an official-capacity suit targets a state official or a local official. This case does not raise, and we do not here decide, whether an official-capacity suit against a hypothetical "state policymaker" under *McMillian* who is not entitled to Eleventh Amendment immunity from monetary relief would constitute an official-capacity suit against a "state official." *See Goldstein v. City of Long Beach*, 715 F.3d 750, 751 (9th Cir. 2013) (summarizing the *McMillian* § 1983 merits inquiry as determining whether a government official "acts as a local or a state official" in a particular context). *But see Hafer*, 502 U.S. at 25 (suggesting perhaps that a state official sued in his official capacity should have access to Eleventh Amendment immunity); *Graham*, 473 U.S. at 167 (same). To the extent the *McMillian* merits inquiry plays

## IV.

At oral argument, we independently probed whether the State had the necessary "notice and [] opportunity to respond" to Buffin and Patterson's claims for this official-capacity suit to "be treated as a suit against the [State]." *Graham*, 473 U.S. at 166. Having carefully reviewed the procedural history and the timing of the district court's merits rulings, we conclude that it did.

To start, the State's attorneys had sufficient notice that Buffin and Patterson brought an official-capacity suit against a state official. The operative complaint targeted the Sheriff in her official capacity. Moreover, because the State and the Attorney General were parties at the motion to dismiss stage, they knew that the district court ruled that the Sheriff acted on behalf of the State and thus accorded her Eleventh Amendment immunity from damages. For the reasons we have already discussed, all this put the State on sufficient notice that the Sheriff could be found liable as a state official in her official capacity.

The State also had multiple opportunities to respond and participate in this litigation, even after the district court's key rulings. Notably, the district court found the Sheriff acted for the State and was entitled to its Eleventh Amendment damages immunity at the same time as and in the same order that it dismissed the California Attorney General from this case. After those three rulings issued, the State Attorney General's Office actually considered rejoining the case. It even told the plaintiffs and the district court that the just-dismissed Attorney General would seek to intervene, and the

---

any role, the district court's ruling on that issue would only further buttress our conclusion that the Sheriff was a state official.

district court granted her leave to file a motion to that effect. Ultimately, however, the California Attorney General chose not to take that opportunity.

Then, when it came time to discuss the issue of attorney's fees, the City Attorney's Office invited the Attorney General's Office to join those discussions, but the State declined this invitation, too. And when the parties filed their suggestion that the State pay nearly $1,950,000 in attorney's fees, the district court invited the State to submit a brief regarding that award (which the State finally did).

In short, the State "received notice and an opportunity to respond." *Graham*, 473 U.S. at 166; *cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) ("When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake."). We are therefore satisfied that this official-capacity suit against the Sheriff may properly be treated as a suit against the State.

## V.

Despite the State's apprehension, our holding here does not mean that the State will need "to intervene to defend the [S]tate's interests every time a local official is sued for purportedly enforcing state law." State of Cal.'s Open. Br. 13. We simply affirm that a county official who enjoys Eleventh Amendment damages immunity and acts as a discretion-less instrument of the State is a state official. If plaintiffs prove that such an official acted unconstitutionally at the State's command—as the Sheriff did here—the State can face § 1988 fees liability.

Because the State has not contested the amount of the district court's attorney's fees award or whether Buffin and Patterson otherwise merit such an award, we **AFFIRM** the district court's order assessing $1,950,000 in attorney's fees against the State of California. Our stay of the district court's order requiring the State to post bond will be **LIFTED** when the mandate issues.