(Slip Opinion)　　　　OCTOBER TERM, 2016　　　　1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LEWIS ET AL. *v.* CLARKE

### CERTIORARI TO THE SUPREME COURT OF CONNECTICUT

No. 15–1500.　Argued January 9, 2017—Decided April 25, 2017

Petitioners Brian and Michelle Lewis were driving on a Connecticut interstate when they were struck from behind by a vehicle driven by respondent William Clarke, a Mohegan Tribal Gaming Authority employee, who was transporting Mohegan Sun Casino patrons. The Lewises sued Clarke in his individual capacity in state court. Clarke moved to dismiss for lack of subject-matter jurisdiction, arguing that because he was an employee of the Gaming Authority—an arm of the Mohegan Tribe entitled to sovereign immunity—and was acting within the scope of his employment at the time of the accident, he was similarly entitled to sovereign immunity against suit. He also argued, in the alternative, that he should prevail because the Gaming Authority was bound by tribal law to indemnify him. The trial court denied Clarke's motion, but the Supreme Court of Connecticut reversed, holding that tribal sovereign immunity barred the suit because Clarke was acting within the scope of his employment when the accident occurred. It did not consider whether Clarke should be entitled to sovereign immunity based on the indemnification statute.

*Held*:

　1. In a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated. Pp. 5–8.

　　(a) In the context of lawsuits against state and federal employees or entities, courts look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit, see *Hafer* v. *Melo*, 502 U. S. 21, 25. A defendant in an official-capacity action—where the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself—may assert sovereign immunity. *Kentucky* v. *Graham*, 473 U. S. 159, 167. But an officer in an individual-capacity action—

which seeks "to impose individual liability upon a government officer for actions taken under color of state law," *Hafer*, 502 U. S., at 25—may be able to assert *personal* immunity defenses but not sovereign immunity, *id.*, at 30–31. The Court does not reach Clarke's argument that he is entitled to the personal immunity defense of official immunity, which Clarke raised for the first time on appeal. Pp. 5–7.

(b) Applying these general rules in the context of tribal sovereign immunity, it is apparent that they foreclose Clarke's sovereign immunity defense. This action arises from a tort committed by Clarke on a Connecticut interstate and is simply a suit against Clarke to recover for his personal actions. Clarke, not the Gaming Authority, is the real party in interest. The State Supreme Court extended sovereign immunity for tribal employees beyond what common-law sovereign immunity principles would recognize for either state or federal employees. Pp. 7–8.

2. An indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak. Pp. 8–12.

(a) This conclusion follows naturally from the principles discussed above and previously applied to the different question whether a state instrumentality may invoke the State's immunity from suit even when the Federal Government has agreed to indemnify that instrumentality against adverse judgments, *Regents of Univ. of Cal.* v. *Doe*, 519 U. S. 425. There, this Court held that the indemnification provision did not divest the state instrumentality of Eleventh Amendment immunity, and its analysis turned on where the potential *legal* liability lay, not from whence the money to pay the damages award ultimately came. Here, the Connecticut courts exercise no jurisdiction over the Tribe or Gaming Authority, and their judgments will not bind the Tribe or its instrumentalities in any way. Moreover, indemnification is not a certainty, because Clarke will not be indemnified should the Gaming Authority determine that he engaged in "wanton, reckless, or malicious" activity. Mohegan Tribe Code §4–52. Pp. 8–10.

(b) Courts have extended sovereign immunity to private healthcare insurance companies under certain circumstances, but those cases rest on the proposition that the fiscal intermediaries are essentially state instrumentalities, and Clarke offers no persuasive reason to depart from precedent and treat a lawsuit against an individual employee as one against a state instrumentality. Similarly, this Court has never held that a civil rights suit under 42 U. S. C. §1983 against a state officer in his individual capacity implicates the Eleventh Amendment and a State's sovereign immunity from suit. Finally, this Court's conclusion that indemnification provisions do not

alter the real-party-in-interest analysis for sovereign immunity pur-
poses is consistent with the practice that applies in the contexts of
diversity of citizenship and joinder. Pp. 10–12.

320 Conn.706, 135 A. 3d 677, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, BREYER, ALITO, and KAGAN, JJ., joined. THOMAS,
J., and GINSBURG, J., filed opinions concurring in the judgment. GOR-
SUCH, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–1500

_____

## BRIAN LEWIS, ET AL., PETITIONERS *v.* WILLIAM CLARKE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF CONNECTICUT

[April 25, 2017]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Indian tribes are generally entitled to immunity from suit. This Court has considered the scope of that immunity in a number of circumstances. This case presents an ordinary negligence action brought against a tribal employee in state court under state law. We granted certiorari to resolve whether an Indian tribe's sovereign immunity bars individual-capacity damages actions against tribal employees for torts committed within the scope of their employment and for which the employees are indemnified by the tribe.

We hold that, in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated. That an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity. We hold further that an indemnification provision does not extend a tribe's sovereign immunity where it otherwise would not reach. Accordingly, we reverse and

remand.

## I

## A

The Mohegan Tribe of Indians of Connecticut traces its lineage back centuries. Originally part of the Lenni Lenape, the Tribe formed the independent Mohegan Tribe under the leadership of Sachem Uncas in the early 1600's. M. Fawcett, The Lasting of the Mohegans 7, 11–13 (1995). In 1994, in accordance with the petition procedures established by the Bureau of Indian Affairs, the Tribe attained federal recognition.[1]   See 59 Fed. Reg. 12140 (1994); Mohegan Const., Preamble and Art. II.

As one means of maintaining its economic self-sufficiency, the Tribe entered into a Gaming Compact with the State of Connecticut pursuant to the Indian Gaming Regulatory Act, 102 Stat. 2467, 25 U. S. C. §2701 *et seq.* The compact authorizes the Tribe to conduct gaming on its land, subject to certain conditions including establishment of the Gaming Disputes Court. See 59 Fed. Reg. 65130 (approving the Tribal-State Compact Between the Mohegan Indian Tribe and the State of Connecticut (May 17, 1994)); Mohegan Const., Art. XIII, §2; Mohegan Tribe Code 3–248(a) (Supp. 2016). The Mohegan Tribal Gaming Authority, an arm of the Tribe, exercises the powers of the Mohegan Tribe over tribal gaming activities. Mohegan Const., Art. XIII, §1; Mohegan Tribe Code §2–21.

Of particular relevance here, Mohegan law sets out

––––––––––––
[1] There are currently 567 federally recognized Indian and Alaska Native entities. 81 Fed. Reg. 26826–26832 (2016); see also Native Hawaiian Law: A Treatise 303–324 (M. MacKenzie ed. 2015) (discussing the existing relationships between the U. S. Government and federally recognized tribes and other indigenous groups in the United States); F. Cohen, Handbook of Federal Indian Law §§1.01–1.07 (2012 and Supp. 2015); V. Deloria & R. DeMallie, Documents of American Indian Diplomacy: Treaties, Agreements, and Conventions, 1775–1979 (1999).

sovereign immunity and indemnification policies applicable to disputes arising from gaming activities. The Gaming Authority has waived its sovereign immunity and consented to be sued in the Mohegan Gaming Disputes Court. Mohegan Const., Art. XIII, §1; Mohegan Tribe Code §3–250(b). Neither the Tribe nor the Gaming Authority has consented to suit for claims arising under Connecticut state law. See Mohegan Const., Art. IX, §2(t); Mohegan Tribe Code §3–250(g); see also *Blatchford* v. *Native Village of Noatak*, 501 U. S. 775, 782 (1991) (observing that Indian tribes have not surrendered their immunity against suits by States). Further, Mohegan Tribe Code §4–52 provides that the Gaming Authority "shall save harmless and indemnify its Officer or Employee from financial loss and expense arising out of any claim, demand, or suit by reason of his or her alleged negligence . . . if the Officer or Employee is found to have been acting in the discharge of his or her duties or within the scope of his or her employment." The Gaming Authority does not indemnify employees who engage in "wanton, reckless or malicious" activity. Mohegan Tribe Code §4–52.

B

Petitioners Brian and Michelle Lewis were driving down Interstate 95 in Norwalk, Connecticut, when a limousine driven by respondent William Clarke hit their vehicle from behind. Clarke, a Gaming Authority employee, was transporting patrons of the Mohegan Sun Casino to their homes. For purposes of this appeal, it is undisputed that Clarke caused the accident.

The Lewises filed suit against Clarke in his individual capacity in Connecticut state court, and Clarke moved to dismiss for lack of subject-matter jurisdiction on the basis of tribal sovereign immunity. See 2014 WL 5354956, *2 (Super. Ct. Conn., Sept. 10, 2014) (Cole-Chu, J.). Clarke

argued that because the Gaming Authority, an arm of the Tribe, was entitled to sovereign immunity, he, an employee of the Gaming Authority acting within the scope of his employment at the time of the accident, was similarly entitled to sovereign immunity against suit. According to Clarke, denying the motion would abrogate the Tribe's sovereign immunity.

The trial court denied Clarke's motion to dismiss. *Id.,* at *8. The court agreed with the Lewises that the sovereign immunity analysis should focus on the remedy sought in their complaint. To that end, the court identified Clarke, not the Gaming Authority or the Tribe, as the real party in interest because the damages remedy sought was solely against Clarke and would in no way affect the Tribe's ability to govern itself independently. The court therefore concluded that tribal sovereign immunity was not implicated. *Id.*, at *2–*8. It also rejected Clarke's alternative argument that because the Gaming Authority was obligated to indemnify him pursuant to Mohegan Tribe Code §4–52 and would end up paying the damages, he should prevail under the remedy analysis. *Id.,* at *7. The trial court reasoned that a "voluntary undertaking cannot be used to extend sovereign immunity where it did not otherwise exist." *Ibid.*

The Supreme Court of Connecticut reversed, holding that tribal sovereign immunity did bar the suit. 320 Conn. 706, 135 A. 3d 677 (2016). The court agreed with Clarke that "because he was acting within the scope of his employment for the Mohegan Tribal Gaming Authority and the Mohegan Tribal Gaming Authority is an arm of the Mohegan Tribe, tribal sovereign immunity bars the plaintiffs' claims against him." *Id.*, at 709, 135 A. 3d, at 680. Of particular significance to the court was ensuring that "plaintiffs cannot circumvent tribal immunity by merely naming the defendant, an employee of the tribe, when the complaint concerns actions taken within the scope of his

duties and the complaint does not allege, nor have the plaintiffs offered any other evidence, that he acted outside the scope of his authority." *Id.*, at 720, 135 A. 3d, at 685. To do otherwise, the court reasoned, would "'eviscerate'" the protections of tribal immunity. *Id.,* at 717, 135 A. 3d, at 684 (alterations and internal quotation marks omitted). Because the court determined that Clarke was entitled to sovereign immunity on the sole basis that he was acting within the scope of his employment when the accident occurred, *id.,* at 720, 135 A. 3d, at 685–686, it did not consider whether Clarke should be entitled to sovereign immunity on the basis of the indemnification statute.

We granted certiorari to consider whether tribal sovereign immunity bars the Lewises' suit against Clarke, 579 U. S. ___ (2016), and we now reverse the judgment of the Supreme Court of Connecticut.

## II

Two issues require our resolution: (1) whether the sovereign immunity of an Indian tribe bars individual-capacity damages against tribal employees for torts committed within the scope of their employment; and (2) what role, if any, a tribe's decision to indemnify its employees plays in this analysis. We decide this case under the framework of our precedents regarding tribal immunity.

## A

Our cases establish that, in the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. See *Hafer* v. *Melo*, 502 U. S. 21, 25 (1991). In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign. See, *e.g., Ex parte*

*New York*, 256 U. S. 490, 500–502 (1921).  If, for example, an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection.  For this reason, an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself.  *E.g., Regents of Univ. of Cal.* v. *Doe*, 519 U. S. 425, 429–430 (1997).  Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they may also be barred by sovereign immunity.  *Kentucky* v. *Graham*, 473 U. S. 159, 165–166 (1985) (internal quotation marks omitted).

The distinction between individual- and official-capacity suits is paramount here.  In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.  *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58, 71 (1989); *Dugan* v. *Rank*, 372 U. S. 609, 611, 620–622 (1963).  This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation.  *Hafer*, 502 U. S., at 25.  The real party in interest is the government entity, not the named official.  See *Edelman* v. *Jordan*, 415 U. S. 651, 663–665 (1974).  "Personal-capacity suits, on the other hand, seek to impose *individual* liability upon a government officer for actions taken under color of state law."  *Hafer*, 502 U. S., at 25 (emphasis added); see also *id.,* at 27–31 (discharged employees entitled to bring personal damages action against state auditor general); cf. *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971).  "[O]fficers sued in their personal capacity come to court as individuals," *Hafer*, 502 U. S., at 27, and the real party in interest is the individual, not the sovereign.

The identity of the real party in interest dictates what

immunities may be available. Defendants in an official-capacity action may assert sovereign immunity. *Graham*, 473 U. S., at 167. An officer in an individual-capacity action, on the other hand, may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances. *Van de Kamp* v. *Goldstein*, 555 U. S. 335, 342–344 (2009). But sovereign immunity "does not erect a barrier against suits to impose individual and personal liability." *Hafer*, 502 U. S., at 30–31 (internal quotation marks omitted); see *Alden* v. *Maine*, 527 U. S. 706, 757 (1996).

## B

There is no reason to depart from these general rules in the context of tribal sovereign immunity. It is apparent that these general principles foreclose Clarke's sovereign immunity defense in this case. This is a negligence action arising from a tort committed by Clarke on an interstate highway within the State of Connecticut. The suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe. This is not a suit against Clarke in his official capacity. It is simply a suit against Clarke to recover for his personal actions, which "will not require action by the sovereign or disturb the sovereign's property." *Larson* v. *Domestic and Foreign Commerce Corp.*, 337 U. S. 682, 687 (1949). We are cognizant of the Supreme Court of Connecticut's concern that plaintiffs not circumvent tribal sovereign immunity. But here, that immunity is simply not in play. Clarke, not the Gaming Authority, is the real party in interest.

In ruling that Clarke was immune from this suit solely because he was acting within the scope of his employment, the court extended sovereign immunity for tribal employees beyond what common-law sovereign immunity princi-

ples would recognize for either state or federal employees. See, *e.g., Graham*, 473 U. S., at 167–168. The protection offered by tribal sovereign immunity here is no broader than the protection offered by state or federal sovereign immunity.

Accordingly, under established sovereign immunity principles, the Gaming Authority's immunity does not, in these circumstances, bar suit against Clarke.[2]

### III

The conclusion above notwithstanding, Clarke argues that the Gaming Authority *is* the real party in interest here because it is required by Mohegan Tribe Code §4–52 to indemnify Clarke for any adverse judgment.[3]

### A

We have never before had occasion to decide whether an indemnification clause is sufficient to extend a sovereign immunity defense to a suit against an employee in his individual capacity. We hold that an indemnification

_____

[2] There are, of course, personal immunity defenses distinct from sovereign immunity. *E.g., Harlow* v. *Fitzgerald*, 457 U. S. 800, 811–815 (1982). Clarke argues for the first time before this Court that one particular form of personal immunity is available to him here—official immunity. See *Westfall* v. *Erwin*, 484 U. S. 292, 295–297 (1988). That defense is not properly before us now, however, given that Clarke's motion to dismiss was based solely on tribal sovereign immunity. See *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.*, 549 U. S. 443, 455 (2007).

[3] As noted above, the Supreme Court of Connecticut did not reach whether Clarke should be entitled to sovereign immunity on the basis of the indemnification statute. We nevertheless consider the issue fairly included within the question presented, as it is a purely legal question that is an integral part of Clarke's sovereign immunity argument and that was both raised to and passed on by the trial court. See *Mitchell* v. *Forsyth*, 472 U. S. 511, 530 (1985) ("[T]he purely legal question on which [petitioner's] claim of immunity turns is appropriate for our immediate resolution notwithstanding that it was not addressed by the Court of Appeals" (internal quotation marks omitted)).

provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak.

Our holding follows naturally from the principles discussed above. Indeed, we have applied these same principles to a different question before—whether a state instrumentality may invoke the State's immunity from suit even when the Federal Government has agreed to indemnify that instrumentality against adverse judgments. In *Regents of Univ. of Cal.,* an individual brought suit against the University of California, a public university of the State of California, for breach of contract related to his employment at a laboratory operated by the university pursuant to a contract with the Federal Government. We held that the indemnification provision did not divest the state instrumentality of Eleventh Amendment immunity. 519 U. S., at 426. Our analysis turned on where the potential *legal* liability lay, not from whence the money to pay the damages award ultimately came. Because the lawsuit bound the university, we held, the Eleventh Amendment applied to the litigation even though the damages award would ultimately be paid by the federal Department of Energy. *Id.,* at 429–431. Our reasoning remains the same. The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.[4]

Here, the Connecticut courts exercise no jurisdiction over the Tribe or the Gaming Authority, and their judgments will not bind the Tribe or its instrumentalities in

---

[4] Our holding in *Hess* v. *Port Authority Trans-Hudson Corporation*, 513 U. S. 30 (1994), is not to the contrary. There the immunity question turned on whether the Port Authority Trans-Hudson Corporation was a state agency cloaked with Eleventh Amendment immunity such that any judgment "*must* be paid out of a State's treasury." *Id.,* at 48, 51–52 (emphasis added). Here, unlike in *Hess*, the damages judgment would not come from the sovereign.

any way. The Tribe's indemnification provision does not somehow convert the suit against Clarke into a suit against the sovereign; when Clarke is sued in his individual capacity, he is held responsible only for his individual wrongdoing. Moreover, indemnification is not a certainty here. Clarke will not be indemnified by the Gaming Authority should it determine that he engaged in "wanton, reckless, or malicious" activity. Mohegan Tribe Code §4–52. That determination is not necessary to the disposition of the Lewises' suit against Clarke in the Connecticut state courts, which is a separate legal matter.

### B

Clarke notes that courts have extended sovereign immunity to private healthcare insurance companies under certain circumstances. See, *e.g., Pani* v. *Empire Blue Cross Blue Shield*, 152 F. 3d 67, 71–72 (CA2 1998); *Pine View Gardens, Inc.* v. *Mutual of Omaha Ins. Co.*, 485 F. 2d 1073, 1074–1075 (CADC 1973); Brief for Respondent 19, n. 4. But, these cases rest on the proposition that the fiscal intermediaries are essentially state instrumentalities, as the governing regulations make clear. See 42 CFR §421.5(b) (2016) (providing that the Medicare Administrator "is the real party of interest in any litigation involving the administration of the program"). It is well established in our precedent that a suit against an arm or instrumentality of the State is treated as one against the State itself. See *Regents of Univ. of Cal.,* 519 U. S., at 429. We have not before treated a lawsuit against an individual employee as one against a state instrumentality, and Clarke offers no persuasive reason to do so now.

Nor have we ever held that a civil rights suit under 42 U. S. C. §1983 against a state officer in his individual capacity implicates the Eleventh Amendment and a

State's sovereign immunity from suit.[5]  Federal appellate
courts that have considered the indemnity question have
rejected the argument that an indemnity statute brings
the Eleventh Amendment into play in §1983 actions.  See,
*e.g., Stoner* v. *Wisconsin Dept. of Agriculture, Trade and
Consumer Protection*, 50 F. 3d 481, 482–483 (CA7 1995);
*Blalock* v. *Schwinden*, 862 F. 2d 1352, 1354 (CA9 1988);
*Duckworth* v. *Franzen*, 780 F. 2d 645, 650 (CA7 1985).
These cases rely on the concern that originally drove the
adoption of the Eleventh Amendment—the protection of
the States against involuntary liability.  See *Hess* v. *Port
Authority Trans-Hudson Corporation*, 513 U. S. 30, 39, 48
(1994).  But States institute indemnification policies vol-
untarily.  And so, indemnification provisions do not impli-
cate one of the underlying rationales for state sovereign
immunity—a government's ability to make its own deci-
sions about "the allocation of scarce resources." *Alden*, 527
U. S., at 751.

Finally, our conclusion that indemnification provisions
do not alter the real-party-in-interest analysis for purposes
of sovereign immunity is consistent with the practice
that applies in the contexts of diversity of citizenship and
joinder.  In assessing diversity jurisdiction, courts look to
the real parties to the controversy.  *Navarro Savings Assn.*
v. *Lee*, 446 U. S. 458, 460 (1980).  Applying this principle,
courts below have agreed that the fact that a third party
indemnifies one of the named parties to the case does not,
as a general rule, influence the diversity analysis.  See,
*e.g., Corfield* v. *Dallas Glen Hills LP*, 355 F. 3d 853, 865
(CA5 2003); *E. R. Squibb & Sons, Inc.* v. *Accident & Cas.
Ins. Co.,* 160 F. 3d 925, 936–937 (CA2 1998).  They have
similarly held that a party does not become a required
party for joinder purposes under Federal Rule of Civil

--------

[5] A suit against a state officer in his official, rather than individual,
capacity might implicate the Eleventh Amendment.  See *Kentucky* v.
*Graham*, 473 U. S. 159, 165–166 (1985).

Procedure 19 simply by virtue of indemnifying one of the named parties. See, *e.g., Gardiner* v. *Virgin Islands Water & Power Auth.*, 145 F. 3d 635, 641 (CA3 1998); *Rochester Methodist Hospital* v. *Travelers Ins. Co.*, 728 F. 2d 1006, 1016–1017 (CA8 1984).

In sum, although tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities. An indemnification statute such as the one at issue here does not alter the analysis. Clarke may not avail himself of a sovereign immunity defense.

### IV

The judgment of the Supreme Court of Connecticut is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE GORSUCH took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–1500

_____

## BRIAN LEWIS, ET AL., PETITIONERS *v.* WILLIAM CLARKE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF CONNECTICUT

[April 25, 2017]

JUSTICE THOMAS, concurring in the judgment.

I remain of the view that tribal immunity does not extend "to suits arising out of a tribe's commercial activities conducted beyond its territory." *Michigan* v. *Bay Mills Indian Community*, 572 U. S. \_\_\_ (2014) (dissenting opinion) (slip op., at 2); see also *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.*, 523 U. S. 751, 764 (1998) (Stevens, J., dissenting). This suit arose from an off-reservation commercial act. *Ante*, at 3. Accordingly, I would hold that respondent cannot assert the Tribe's immunity, regardless of the capacity in which he was sued. Because the Court reaches the same result for different reasons, I concur in its judgment.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–1500

_____

## BRIAN LEWIS, ET AL., PETITIONERS *v.* WILLIAM CLARKE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF CONNECTICUT

[April 25, 2017]

JUSTICE GINSBURG, concurring in the judgment.

On the scope of tribal immunity from suit, I adhere to the dissenting views expressed in *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.*, 523 U. S. 751, 760 (1998) (Stevens, J., dissenting), and *Michigan* v. *Bay Mills Indian Community*, 572 U. S. \_\_\_, \_\_\_ (2014) (THOMAS, J., dissenting) (slip op., at 1). See also *id.*, at \_\_\_ (GINSBURG, J., dissenting) (slip op., at 1). These dissenting opinions explain why tribes, interacting with nontribal members outside reservation boundaries, should be subject to nondiscriminatory state laws of general application. I agree with the Court, however, that a voluntary indemnity undertaking does not convert a suit against a tribal employee, in the employee's individual capacity, into a suit against the tribe. I therefore concur in the Court's judgment.