In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 22-2077

TERESSA MESTEK,

*Plaintiff-Appellant,*

*v.*

LAC COURTE OREILLES COMMUNITY HEALTH CENTER, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-cv-541 — **William M. Conley**, *Judge.*

———————

ARGUED MARCH 27, 2023 — DECIDED JUNE 29, 2023

———————

Before HAMILTON, SCUDDER, and PRYOR, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Teressa Mestek invoked the False
Claims Act's anti-retaliation provision and sued the Commu-
nity Health Center of the Lac Courte Oreilles Band of Lake
Superior Chippewa Indians as well as several individuals af-
filiated with the Health Center. She contends that the Health
Center fired her because she flagged irregularities in the
Health Center's billing practices that she believed reflected
fraud. The district court granted the defendants' motion to

dismiss, concluding that the doctrine of tribal sovereign immunity precluded Mestek from proceeding with her claims. We agree and affirm. Although Mestek has not sued the Tribe itself, the Health Center is an arm of the Tribe and therefore entitled to avail itself of the Tribe's sovereign immunity. And the handful of individual employee defendants also properly invoked the Tribe's immunity because Mestek sued them in their official capacities.

# I

## A

We accept all well-pleaded facts as true and credit all plausible inferences in Mestek's favor. The Lac Courte Oreilles Band of Lake Superior Chippewa Indians is a federally recognized tribe in northwestern Wisconsin. In 2013 the Tribe's Community Health Center hired Teressa Mestek, a former employee, to serve as the Director of Health Information. A few years later in 2017 the Health Center implemented a new electronic health records system. Mestek soon raised questions about how the new system operated, including by expressing concern to management that the Health Center was improperly billing Medicare and Medicaid. These events eventually led to an external audit of the Health Center's billing practices, which uncovered a number of problems.

After receiving the audit results in July 2018, Jacqueline Bae, the Health Director and head of the Health Center, called Mestek into her office to ask if she was "loyal." Mestek answered yes, but then persisted in her efforts to uncover billing irregularities. A month later, on August 24, Mestek learned that she was being fired in a meeting with Dr. Shannon Starr (the Medical Director) and Sarah Klecan (the HR Director).

Mestek later learned that Dr. Starr made the termination decision and had signed the termination letter over Bae's typed name.

Convinced she had been fired because she blew the whistle on billing fraud, Mestek sued the Health Center and six individuals—five Health Center employees named in both their personal and official capacities, as well as an independent contractor—in federal court. Her complaint lodged claims under the False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h), and Wisconsin law.

B

The district court granted the defendants' motion to dismiss for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). The district court began by both rejecting Mestek's contention that the False Claims Act's anti-retaliation provision abrogated tribal sovereign immunity and acknowledging that the defendants had not waived immunity. The district court did not see any language in the anti-retaliation provision even hinting that Congress intended to strip away tribal immunity. But, the district court continued, Mestek had not named the Tribe itself as a defendant. This raised the question whether the defendants she had named—the Health Center, five of its employees, and one of its independent contractors—could avail themselves of the Tribe's protections.

The district court answered yes. Tribal sovereign immunity extended to the Health Center because it was an arm of the Tribe. And Mestek's claims against the individual employees amounted to official-capacity actions that would, in effect, run against the Tribe. Finally, with every federal claim dismissed, the district court declined to exercise supplemental

jurisdiction over Mestek's state-law claim against Michael Popp, an independent contractor.

Mestek now appeals, urging us to reject the district court's application of tribal sovereign immunity.

## II

The doctrine of tribal sovereign immunity is a core feature of Indian self-governance. It derives from tribes' status as "separate sovereigns pre-existing the Constitution" and the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 58 (1978)); see also *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 476 U.S. 877, 890 (1986) (explaining that "common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty"). From a practical standpoint, unless the Tribe waives this protection, the immunity protects the Tribe from both suit and liability.

Congress, however, can abrogate a tribe's immunity by authorizing plaintiffs to sue a tribe for violations of federal law. This power to abrogate stems from Congress's plenary control over tribes as "domestic dependent nations." *Bay Mills*, 572 U.S. at 803 (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831)). But the authorization must be crystal clear. See *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1695 (2023) ("This clear-statement rule is a demanding standard."). We have cautioned that "Congress' words must fit like a glove in their unequivocality," and so we have held that "[a]ny ambiguity must be interpreted in favor of [sovereign] immunity." *Meyers v.*

*Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 827 (7th Cir. 2016). Indeed, "courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. It is a tall order for a court to conclude that Congress abrogated tribal sovereign immunity.

Mestek's lawsuit runs headfirst into this immunity backdrop. She insists that Congress abrogated tribal sovereign immunity in the False Claim Act's anti-retaliation provision. In the alternative, she contends that the defendants she sued— the Health Center and its individual employees—cannot invoke the Tribe's immunity. We take these questions up in turn without any deference to the district court's conclusions. See *Meyers*, 836 F.3d at 824.

A

The False Claims Act's anti-retaliation prohibition provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

Like the district court, we see no indication that Congress intended to abrogate tribal sovereign immunity in this anti-retaliation provision. Notice the actors that Congress named in § 3730(h)(1): "employee, contractor, or agent." Nowhere did Congress explicitly reference "Indians" or "tribes." See, *e.g.*, *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 758–59 (1998) (listing examples of abrogation and non-abrogation). Nor is this a statute where Congress attempted to "cover[ ] the waterfront" of governmental units by using catch-all language. *Coughlin*, 143 S. Ct. at 1695, 1700 n.7 (finding that Congress abrogated tribal sovereign immunity in certain portions of the Bankruptcy Code by using a catch-all abrogation provision covering the "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government" (quoting 11 U.S.C. § 101(27))). To our eye, abrogation is not a close call in the False Claims Act's anti-retaliation provision.

But recall that Mestek did not name the Lac Courte Oreilles Band itself as a defendant. She instead sued the Health Center and five individual employees (as well as an independent contractor). These tribal-affiliated defendants nevertheless contend that they are so affiliated with and a part of the Tribe to be tantamount to the Tribe, thereby allowing them to invoke sovereign immunity's protection from suit too.

B

Take the Health Center first. We agree with the district court's well-reasoned analysis. And in doing so, we follow the lead of the parties before us—and every other circuit to have considered the issue—in adopting the "arm of the tribe" test.

The test provides an analytical tool for assessing what entities can avail themselves of a tribe's sovereign immunity. The overarching inquiry is straightforward: we must determine whether the tribal-affiliated entity is acting in a tribal capacity by exercising a tribe's commercial or economic power. See *Bay Mills*, 572 U.S. at 790 (discussing how tribal sovereign immunity extends to "a tribe's commercial activities, even when they take place off Indian lands").

This extension of sovereign immunity beyond a tribe itself makes sound policy sense. Immunity furthers tribal self-governance by limiting the extent to which courts can interfere in a tribe's commercial matters. See *Kiowa Tribe*, 523 U.S. at 757 (explaining how the doctrine "promote[s] economic development and tribal self-sufficiency"); see also *Coughlin*, 143 S. Ct. at 1705 (Gorsuch, J., dissenting) ("[T]he choice to abrogate tribal immunity is fundamentally political in nature.").

In joining our fellow circuits, we similarly conclude that determining whether an entity is acting as an arm of the tribe requires consideration of the following factors:

- the method of creation of the economic entity;

- its purpose;

- the structure, ownership, and management, including the amount of control the tribe has over the entity;

- the tribe's intent with respect to the sharing of its sovereign immunity; and

- the financial relationship between the tribe and the entity.

See, *e.g.*, *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019); *White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014); *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010).

These interrelated factors permit examination of the entity's background, business purpose, and operations to ascertain whether it is truly a tribal enterprise—an analysis that furthers the foundational principles of tribal sovereign immunity. See Cohen's Handbook of Federal Indian Law § 7.05[1][a] (2019) (examining how the arm of the tribe test advances and fits within considerations of tribal sovereign immunity). To be sure, though, these factors do not amount to a scorekeeping exercise. In some cases one factor might weigh more heavily than others, and in other cases a different factor might rise in importance. The arm of the tribe test supplies a qualitative, holistic framework for analyzing the entity in question and its relationship to a tribe.

C

We consider each of these factors in connection with the Health Center next, though we must first resolve a preliminary procedural issue. Much of our analysis relies upon the Lac Courte Oreilles Tribal Code of Law, which the defendants attached to their motion to dismiss because it contains provisions bearing on the relationship between the Health Center and the Tribe. We agree with the district court that the Tribal Code of Law is subject to judicial notice. See *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). It is an official governance document, like a state constitution or municipal charter, that does not contain facts "subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012). The district court committed no error in considering the Code in ruling on the defendants' motion to dismiss. And with the benefit of the Code, we can see that most of the factors favor the Tribe.

*First*, the Tribal Code of Law states that the Health Center "is a public body established as a subordinate entity of the Tribe." Other provisions of the Code further confirm that the Health Center's key structural documents—its personnel policy and procedural manual—were established "pursuant to the inherent authority of the [Tribe]." That these governance documents emerged through an exercise of tribal authority cuts in favor of the Health Center operating as an arm of the Tribe.

*Second*, the Tribal Code of Law also supplies insight into our analysis of the Health Center's purpose by defining the Health Center's mission statement in the same chapter as the personnel policies and procedures. The Health Center's mission is "to provide confidential quality family orientated healthcare in an environment that is respectful and fosters innovation utilizing available resource[s] to maximize services to improve the overall health of the Tribal community." The clear nexus between the Health Center and the Tribe's health and welfare also favors recognizing tribal sovereign immunity.

*Third*, as for the structure, ownership, and management of the Health Center, including the amount of control the Tribe has over the Center, the Tribal Code of Law must give way to

the well-pleaded facts in Mestek's complaint. No doubt the official governance structure indicates that the Tribe ultimately controls the Health Center: the Tribal Code of Law specifies that the Health Director "oversee[s] all matters relating to program requirements including daily operations" of the Health Center, and the Health Director reports directly to the Tribal Governing Board, including on all employment decisions. But Mestek alleges that, notwithstanding this structure, Health Director Jaqueline Bae was not actually accountable to the Tribe. Indeed, Mestek expressly alleged that Dr. Starr, the Health Center's Medical Director—not the Tribal Governing Board—authorized her termination. Crediting this allegation, as we must at the motion to dismiss stage, we find that this purported lack of tribal control cuts against a conclusion that the Health Center acted as an arm of the Tribe.

*Fourth*, the Tribe plainly intended to confer its sovereign immunity on the Health Center. In a provision entitled "Sovereignty," the Tribal Code of Law states that "no private lawsuit can be maintained against the Tribe or any of its subordinate entities such as the LCO-CHC [the Health Center], unless the Tribe consents to the action." This specific reference to the Health Center leaves little doubt that the Tribe intended for its immunity to extend to the Health Center.

*Fifth* and finally, the financial relationship between the Tribe and the Health Center is inconclusive. Neither the complaint nor official governance documents paint a clear picture of the financial ties between the Health Center and the Tribe.

Considered in their totality, these factors tip in support of the conclusion that the Health Center is an arm of the Tribe. The many explicit and implicit references to the Health Center's status as a subordinate entity to the Tribe outweigh the

lone dispute over how much control the Tribal Governing Board exercised over the Health Center's employment matters. It would undermine the foundational principles of tribal sovereign immunity if a single employee's decision to act beyond her authority could outweigh significant additional evidence pointing in favor of the entity operating as a tribal entity. In sum, the first, second, and fourth factors all point to a common understanding: that the Health Center furthers the self-sufficiency and self-governance of the Lac Courte Oreilles Band.

The district court properly dismissed Mestek's claim against the Health Center based on tribal sovereign immunity since this claim is tantamount to suing the Tribe itself.

D

We close by addressing the six individual defendants, five of whom served as Health Center employees: Louis Taylor, Jacqueline Bae, Shannon Starr, Sarah Klecan, and David Franz. Recall, too, that Mestek sued these five defendants in both their personal and official capacities. The district court concluded that despite the formal allegations in Mestek's complaint, her claims implicated only these defendants' official capacities because the relief she requested would effectively run against the Tribe—meaning sovereign immunity applied. We agree.

The Supreme Court has provided guidance on how to approach this personal- versus official-capacity distinction. "[C]ourts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). That

determination requires us to ask whether "the relief sought is only nominally against the official and in fact is against the official's office," in which case the claim is against the defendant in her official capacity. *Id.* Put another way, a suit is against an individual in her personal capacity when the relief "will not require action by the sovereign or disturb the sovereign's property." *Id.* at 163 (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687 (1949)).

These principles find straightforward application here and show why Mestek's claims are against the employee defendants only in their official capacities. In her complaint, Mestek requested front pay, back pay, damages, reinstatement, and injunctive relief prohibiting the defendants from blacklisting or retaliating against her. Critically, however, any monetary relief would come from the Health Center's coffers. And reinstatement, as well, would likewise require action on the part of the Health Center, not the individual defendants.

To the extent that Mestek contends that the district court could have entered injunctive relief preventing the individual defendants from blacklisting her without requiring the Health Center to act, she has forfeited that contention. She did not raise it below for the district court to consider in the first instance, and she has not identified any reason for us to label this as plain error. See *Hacker v. Dart*, 62 F.4th 1073, 1080 (7th Cir. 2023). Because Mestek has, in effect, sued the five employees in their official capacities, tribal sovereign immunity bars her claims against them. See *Lewis*, 581 U.S. at 163.

That leaves Michael Popp, the independent contractor who Mestek sued under Wisconsin law alone. As with every other facet of this case, the district court exercised its sound

discretion in declining to exercise supplemental jurisdiction over him when no other federal claim could proceed.

For these reasons, we AFFIRM.