**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KYLE WELSH; ESTATE OF JILL
WELSH; WW YOUNG MONEY,
LLC, doing business as Flame On
Indian Smoke Shop,

*Plaintiffs - Appellants*,

v.

REBECCA LOUDBEAR; AMELIA
FLORES; JOHN YACKLEY;
UNKNOWN PARTIES,

*Defendants - Appellees*.

No. 25-5475

D.C. No.
2:25-cv-01159-
SPL

OPINION

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted March 19, 2026
Tucson, Arizona

Filed June 4, 2026

Before: Michael Daly Hawkins, Andrew D. Hurwitz, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

## Sovereign Immunity

Reversing the district court's dismissal of a civil RICO action against three officials of the Colorado River Indian Tribes ("CRIT"), the panel held that (1) the tribal defendants were not entitled to sovereign immunity because they were sued in their individual capacities, and (2) CRIT was not a required party without whose joinder the litigation could not proceed.

The panel held that Indian tribes have sovereign immunity, and tribal officials may assert the tribe's immunity when the sovereign is the real party in interest. However, individual capacity suits for money damages related to an officer's official duties are generally permissible. After *Lewis v. Clarke*, 581 U.S. 155 (2017), the relevant inquiry when determining whether tribal officials enjoy sovereign immunity is whether the remedy sought is truly against the sovereign. The panel concluded that, under that analysis, the tribal defendants here were clearly not entitled to sovereign immunity because they did not show that the remedy sought by the plaintiffs would run against CRIT or that CRIT was the real party in interest.

The panel also held that CRIT was not a required party under Fed. R. Civ. P. 19(a)(1) because the outcome of the litigation would not affect its real property or contractual rights.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the dismissal of the complaint under Rules 12(b)(1) and 12(b)(7) and remanded for the district court to consider whether the complaint states a claim upon which relief can be granted and if not, whether leave to amend should be granted.

**COUNSEL**

William M. Fischbach III (argued), Garo V. Moughalian, and Dennis I. Wilenchik, Wilenchik & Bartness PC, Phoenix, Arizona; for Plaintiffs-Appellants.

Rob R. Smith (argued) and Rachel B. Saimons, Kilpatrick Townsend & Stockton LLP, Seattle, Washington; Alexander M. Mallory, Kilpatrick Townsend & Stockton LLP, Scottsdale, Arizona; for Defendants-Appellees.

# OPINION

HURWITZ, Circuit Judge:

This is a civil Racketeer Influenced and Corrupt Organizations ("RICO") action against three officials of the Colorado River Indian Tribes ("CRIT") (the "tribal defendants"). The issues for decision are: (1) whether the tribal defendants are protected by sovereign immunity; and (2) whether CRIT is a required party without whose joinder this litigation cannot proceed.

We conclude that the tribal defendants are not entitled to sovereign immunity because they were sued in their individual capacities and any recovery will run against them, not CRIT. We also conclude that CRIT is not a required party. Accordingly, we reverse the district court's dismissal of the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) and remand for the district court to address in the first instance the tribal defendants' motion to dismiss under Rule 12(b)(6).

## I.

### A.

In 2015, WW Young Money, LLC, owned by siblings and CRIT members Kyle and Jill Welsh (collectively, the "Welshes"), entered a five-year lease with CRIT to operate a smoke shop in Parker, Arizona, on the CRIT reservation.[1] The lease was renewed for an additional five years in 2020.

---

[1] Jill Welsh is deceased and is represented in this litigation by the personal representative of her estate.

In 2021, CRIT Chairwoman Amelia Flores and Attorney General Rebecca Loudbear sent the Welshes a notice on tribal letterhead terminating the lease for violations of the CRIT property code. The letter alleged that the Welshes failed to make timely rent payments and continued to occupy the premises after a demand to leave. It also alleged the Welshes caused nuisance and damage to property, including an incident during which Kyle "created a commotion" outside the shop and engaged CRIT police in a high-speed chase.[2]

**B.**

The Welshes brought this action under 18 U.S.C. § 1964(c), the federal civil RICO statute, against Chairwoman Flores, Attorney General Loudbear, and John Yackley, the former manager of the CRIT-owned commercial plaza where the Welshes' smoke shop was located. The RICO statute provides, in relevant part:

> Any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c). The Welshes' complaint alleges that the tribal defendants "conducted the affairs of the 'Running Man Criminal Organization' . . . through a pattern of

---

[2] Kyle pleaded guilty to federal charges arising from these events, admitting that he "intentionally assaulted [a CRIT police officer] by striking the vehicle he was in with his own vehicle."

racketeering activity consisting of felony predicate acts in such manner so as to destroy [the Welshes] and their lease, and their business, and to cause it to be overtaken by others."[3] It further alleges that the tribal defendants illegally terminated the lease, converted and sold the smoke shop's inventory for personal profit, demanded extortionary payments, and provided false information to federal law enforcement leading to Kyle's arrest and imprisonment. The complaint seeks damages of "millions of dollars in losses of income, profits and business property," and compensation for "physical injuries and emotional distress" to Kyle.

The tribal defendants moved to dismiss, invoking Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). The district court granted the motion under Rule 12(b)(1), finding the tribal defendants had sovereign immunity.[4] The court determined that the "pertinent question . . . is whether Defendants were acting in their representative capacity and within the scope of their authority when the alleged conduct occurred." Applying this framework, the court agreed with the tribal defendants that "the pleaded acts show Plaintiffs seek to hold the Tribal Defendants liable for actions taken in their official capacities under tribal law," and that the defendants were therefore

---

[3] The alleged predicate felony offenses include interference with commerce by robbery, extortion, threats, and violence, 18 U.S.C. § 1951; obstruction of justice and a criminal investigation, 18 U.S.C. §§ 1503, 1510; theft, 18 U.S.C. § 661; and mail and wire fraud, 18 U.S.C. §§ 1341, 1343.

[4] Rule 12(b)(1) allows a party to seek dismissal for "lack of subject-matter jurisdiction." "Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

entitled to sovereign immunity. The district court also noted that the "lease was terminated under tribal law, and the termination letter explicitly cites numerous provisions of the CRIT property code, so the monetary damages Plaintiffs seek would necessarily interfere with tribal self-governance."

The district court also granted the motion to dismiss under Rule 12(b)(7).[5] The court held that CRIT was "a necessary party to this action under Rule 19" because it "is clear that the Tribe, which both executed and terminated the Lease Agreement with Plaintiffs, has a legally protected interest in this action."[6] The district court concluded that CRIT's sovereign immunity rendered joinder impossible, and dismissal was "the only proper solution" because "no judgment rendered in the Tribe's absence could be adequate."

Having granted the motion to dismiss under Rules 12(b)(1) and 12(b)(7), the district court did not analyze whether the RICO claims survive dismissal under Rule 12(b)(6). The Welshes timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

---

[5] Rule 12(b)(7) allows a motion to dismiss for "failure to join a party required by Rule 19." *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1178 (9th Cir. 2012).

[6] Before 2007, Rule 19 asked whether a party was "necessary" and "indispensable." *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008). The current iteration of the rule asks whether a party is "required" and "whether, in equity and good conscience, the action should proceed" in its absence. *Id*. at 857. These revisions were intended to be only "stylistic," and we treat them accordingly. *Id.* at 855.

## II.

We first address whether the district court lacked subject matter jurisdiction because the tribal defendants had sovereign immunity. Our review is de novo. *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396 (9th Cir. 1996).

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Tribal officials may assert the tribe's sovereign immunity when "the sovereign is the real party in interest." *Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017).

Relying on *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985), the district court concluded that sovereign immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority." The court reasoned that because the alleged criminal conspiracy occurred while the tribal defendants were carrying out their official duties, they were entitled to sovereign immunity.

However, our opinions after *Hardin* have clarified that "individual capacity suits related to an officer's official duties are generally permissible." *Maxwell v. County of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013). Of course, "tribal officials are immunized from suits brought against them *because* of their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." *Id*. (cleaned up). But "tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." *Pistor*, 791 F.3d at 1112 (cleaned up).

Any doubts remaining about the scope of tribal official immunity were put to rest by the Supreme Court in *Lewis v. Clarke*, 581 U.S. 155 (2017). The defendant in that case was an employee of the Mohegan Tribal Gaming Authority who caused an accident while transporting patrons from the tribal-owned casino to their homes. *Id*. at 159-60. Although the suit was "brought against a tribal employee operating a vehicle within the scope of his employment," the Supreme Court held that the defendant was not entitled to sovereign immunity. *Id*. at 163. A contrary rule, the Court reasoned, would improperly extend "sovereign immunity for tribal employees beyond what common-law sovereign immunity principles would recognize for either state or federal employees." *Id*. at 163-64.

After *Lewis*, the relevant inquiry when determining whether tribal officials enjoy sovereign immunity is "whether the remedy sought is truly against the sovereign." *Id.* at 162. Under that analysis, the tribal defendants here are clearly not entitled to sovereign immunity.

Here, the tribal defendants were sued "in their individual capacities for money damages," and those "damages will come from their own pockets, not the tribal treasury." *Maxwell*, 708 F.3d at 1089. The complaint makes clear the Welshes seek recovery only from the tribal defendants and do not attempt to impose liability on CRIT.[7] Nor do the Welshes seek reinstatement of the lease with CRIT. Thus, this suit "will not require action by the sovereign or disturb the sovereign's property." *Lewis*, 581 U.S. at 163 (cleaned up).

---

[7] As the tribal defendants acknowledge, whether CRIT may ultimately indemnify its officials is irrelevant. *See Maxwell*, 708 F.3d at 1090.

The tribal defendants' contention that CRIT is the real party in interest because damages may be calculated by reference to the lease is unpersuasive. "The critical inquiry is who may be legally bound by the court's adverse judgment." *Lewis*, 581 U.S. at 165. Thus, the mere fact that the damages sought arise out of termination of the lease is irrelevant as long as the tribal defendants, and not CRIT, are ordered to pay the judgment.

The tribal defendants' contention that "the practical effect of the relief [the Welshes] seek would be to challenge tribal decisions about property and governance" similarly misses the mark. The Welshes seek damages resulting from alleged criminal acts carried out by individuals, not CRIT. And "[a]n officer sued in his individual capacity . . . cannot claim sovereign immunity from suit, so long as the relief is sought not from the government treasury but from the officer personally." *Pistor*, 791 F.3d at 1112 (cleaned up).

In sum, the tribal defendants have not shown that the remedy sought by the Welshes would run against CRIT or that CRIT is "the real party in interest." *Lewis*, 581 U.S. at 161. They are therefore not entitled to invoke CRIT's sovereign immunity.

## III.

We turn next to the district court's determination that CRIT is a required party without whose joinder this litigation cannot proceed. *See* Fed. R. Civ. P. 12(b)(7). We review the "decision to dismiss an action for failure to join a required party for abuse of discretion" but review the district court's "underlying legal conclusions de novo." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (cleaned up).

Application of Rule 19 requires a two-step inquiry. First, under Rule 19(a)(1), we determine whether a person or entity is a required party. Fed. R. Civ. P. 19(a)(1). Second, if a required party cannot be joined, we determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* 19(b).

A "wall of circuit authority" mandates dismissal under Rule 12(b)(7) if a tribe is a required party. *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014). But that case law does not warrant dismissal here, because CRIT is not a required party to this action.

A party is required to be joined if it "has a legally protected interest in the subject matter" of a suit and "proceeding . . . in [its] absence would impair that interest." *Dine Citizens*, 932 F.3d at 851. For example, "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002). Thus, to determine whether a party is required, "it is necessary carefully to identify the absent [party's] interest at stake." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 973 (9th Cir. 2008).

This case is different from those in which we have found a tribe to be a required party. In *Makah Indian Tribe v. Verity*, for instance, a tribe challenged the Secretary of Commerce's adoption of annual ocean harvest quotas. 910 F.2d 555, 557 (9th Cir. 1990). The challenge sought "reallocation of the 1987 harvest" or a change in "inter-tribal allocation decisions," and we held that twenty-three absent tribes with ocean harvest rights were required parties

because "any share that goes to the Makah must come from the other tribes." *Id*. at 559 (cleaned up). Similarly, in *Lomayaktewa v. Hathaway*, Hopi tribal members sued to void a ten-year coal lease between the Hopi Tribe and Peabody Coal Company. 520 F.2d 1324, 1324-25 (9th Cir. 1975). We held that the Hopi Tribe was a required party because vacating the lease would "deprive the Hopi Tribe of benefits under the lease on the order of tens of millions of dollars." *Id*. at 1326. And, in *American Greyhound Racing, Inc. v. Hull*, we concluded that Arizona tribes with gaming compacts were required parties to an action seeking to declare those compacts illegal and enjoin the governor from approving or renewing them. 305 F.3d 1015, 1022-24 (9th Cir. 2002).

In each of those cases, we found a tribe a required party to an action that seeks to vacate, invalidate, or otherwise alter its property interests. The fact that the lease between the Welshes and CRIT is relevant to this action, however, is not enough to make CRIT a required party. Even if "a legally protected interest exists, the court must further determine whether that interest will be *impaired* or *impeded* by the suit." *Makah*, 910 F.2d at 558.

Because the Welshes do not seek to reinstate the lease, this case is unlike those in which "we concluded that absent tribes were necessary because the litigation could affect already-negotiated lease agreements." *Dine Citizens*, 932 F.3d at 853. The outcome of this litigation will not affect CRIT's real property or contractual rights. CRIT is not a required party under Rule 19(a)(1), and the district court erred in dismissing the complaint under Rule 12(b)(7).

## IV.

Having granted the tribal defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(7), the district court found it unnecessary to consider the tribal defendants' Rule 12(b)(6) motion. We decline to do so in the first instance. "A district court ordinarily must grant leave to amend when it dismisses claims under Rule 12(b)(6)," *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017), and the district court did not address the Welshes' request for leave to amend. We therefore reverse the dismissal of the complaint under Rules 12(b)(1) and 12(b)(7), and remand for the district court to consider whether the complaint states a claim upon which relief can be granted and if not, whether leave to amend should be granted.

**REVERSED and REMANDED.**